UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DAVID YOUNGE,                                     :
                                                  :
                    Plaintiff,                    :
                                                  :
          -against-                               :          CASE NO.: _____
                                                  :
AIRCASTLE LIMITED, MICHAEL J.                     :          **COMPLAINT**
INGLESE, AARON DAHLKE, PETER V.                   :
UEBERROTH, RONALD W. ALLEN,                       :          **DEMAND FOR JURY TRIAL**
GIOVANNI BISIGNANI, MICHAEL J.                    :
CAVE, DOUGLAS A. HACKER, JUN                      :
HORIE, TAKASHI KURIHARA, TAKAYUKI :
SAKAKIDA, RONALD L. MERRIMAN,                     :
AGNES MURA, and CHARLES W.                        :
POLLARD,                                          :
                                                  :
                    Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff David Younge ("Plaintiff"), by and through his attorneys, alleges the following

upon information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Aircastle Limited ("Aircastle" or the

"Company") and members of the Company's executive officers and board of directors

(collectively referred to as the "Board" or the "Individual Defendants" and, together with Aircastle,

the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act

of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities

and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in

connection with the proposed acquisition by Marubeni Corporation ("Marubeni") and Mizuho

Leasing Company, Limited ("Mizuho Leasing" and together the "Marubeni Consortium") through MM Air Limited ("Parent"), a newly-formed entity controlled by the Marubeni Consortium, and MM Air Merger Sub Limited ("Merger Sub"), a wholly-owned subsidiary of Parent, to acquire all of the issued and outstanding shares of the Company. Marubeni, by and through its affiliates, holds approximately 28.8% of the outstanding common stock of the Company.

2.      On November 5, 2019, Aircastle entered into an Agreement and Plan of Merger (the "Merger Agreement") by and among the Company, Parent, and Merger Sub, pursuant to which Merger Sub will merge with and into the Company, with the Company surviving the merger as a wholly-owned subsidiary of the Parent (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, each stockholder of Aircastle common stock will be entitled to receive $32.00 in cash per share of common stock (the "Merger Consideration").

4.      On December 6, 2019, in order to convince Aircastle's public common stockholders to vote in favor or against the merger, the Board authorized the filing of a materially incomplete and misleading Schedule 14A Preliminary Proxy Statement (the "Proxy") with the SEC.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by Aircastle's financial advisor, Citigroup Global Markets Inc. ("Citi"), in support of its fairness opinion; and (ii) background information concerning Citi's previous work for the Company and Marubeni Consortium.

6.      The shareholder vote will be scheduled in the coming weeks, as the Proposed Transaction is set to close in the first half of 2020 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's

stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Aircastle's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's legal advisor for the Proposed Transaction, Skadden, Arps, Slate, Meagher & Flom LLP, is headquartered in this District and critical meetings concerning the Proposed Transaction occurred there. Moreover, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Aircastle common stock.

12.     Defendant Aircastle Limited is a Bermuda exempted company with its principal executive office located at 201 Tresser Boulevard, Suite 400, Stamford, CT 06901. Aircastle, through its subsidiaries, leases, finances, sells, and manages commercial flight equipment to airlines worldwide. As of September 30, 2019, Aircastle owned and managed on behalf of its joint ventures 277 aircraft leased to 87 customers located in 48 countries. Aircastle's common stock trades on the NYSE under the ticker symbol "AYR."

13.     Defendant Michael J. Inglese is, and has been at all relevant times, Chief Executive Officer and a director of the Company.

14.     Defendant Aaron Dahlke is, and has been at all relevant times, Chief Financial Officer of the Company.

15.     Defendant Peter V. Ueberroth is, and has been at all relevant times, Chairman of the Board.

16.     Defendant Ronald W. Allen is, and has been at all relevant times, a director of the

Company.

17.     Defendant Giovanni Bisignani is, and has been at all relevant times, a director of the Company.

18.     Defendant Michael J. Cove is, and has been at all relevant times, a director of the Company.

19.     Defendant Douglas A. Hacker is, and has been at all relevant times, a director of the Company.

20.     Defendant Jun Horie is, and has been at all relevant times, a director of the Company.

21.     Defendant Takashi Kurihara is, and has been at all relevant times, a director of the Company.

22.     Defendant Takayuki Sakakida is, and has been at all relevant times, a director of the Company.

23.     Defendant Ronald L. Merriman is, and has been at all relevant times, a director of the Company.

24.     Defendant Agnes Mura is, and has been at all relevant times, a director of the Company.

25.     Defendant Charles W. Pollard is, and has been at all relevant times, a director of the Company.

26.     The defendants identified in paragraphs 13 through 25 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Aircastle, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Proposed Transaction

27.     Aircastle is a Bermuda exempted company. Founded in 2004, Aircastle Limited acquires, leases and sells commercial jet aircraft to airlines throughout the world.

28.     MM Air Limited is a Bermuda exempted company and is a newly-formed entity controlled by affiliates of Marubeni Consortium. Marubeni Corporation is Japanese corporation, and its consolidated subsidiaries use their business networks, both within Japan and overseas, to conduct importing and exporting (including third country trading), as well as domestic business, encompassing a diverse range of business activities across wide-ranging fields including lifestyle, ICT & real estate business, forest products, food, agricultural business, chemicals, power business, energy, metals & mineral resources, plant, aerospace & ship, finance & leasing business, construction, auto & industrial machinery, and next generation business development. While Mizuho Leasing was established in 1969 as a general leasing company under the initiative of The Industrial Bank of Japan, Ltd. (now Mizuho Bank, Ltd.) and with investment from major companies across Japanese industry. In addition to providing finance for capital investment in industrial machine tools, IT equipment, medical equipment and other business assets, Mizuho Leasing has been expanding its reach into new business areas by proposing a wide range of solutions that address the diverse needs of corporate clients.

29.     On November 6, 2019, Aircastle announced the Proposed Transaction. The press release stated as follows:

### Aircastle Limited Enters into Merger Agreement with Affiliates of Marubeni and Mizuho Leasing

STAMFORD, Conn., Nov. 6, 2019 /PRNewswire/ -- Aircastle Limited (NYSE: AYR) ("Aircastle") announced today that it has entered into a definitive agreement to be acquired by a newly-formed entity controlled by

affiliates of Marubeni Corporation ("Marubeni") and Mizuho Leasing Company, Limited ("Mizuho Leasing"). Under the terms of the merger agreement, Aircastle shareholders will receive $32.00 in cash for each common share of Aircastle (other than shares already owned by Marubeni and its affiliates), representing a total valuation of approximately $2.4 billion, or approximately $7.4 billion including debt obligations to be assumed or refinanced net of cash.

"After a review of strategic alternatives by our Board of Directors, we are pleased to reach this agreement with Marubeni and Mizuho Leasing, which delivers tremendous value and immediate liquidity to our shareholders," said Peter V. Ueberroth, Chairman of the Aircastle Board of Directors.

"We are excited to continue our partnership with Marubeni and Mizuho Leasing," said Michael J. Inglese, Chief Executive Officer of Aircastle. "We believe this transaction will deliver significant value to our shareholders, and we look forward to working with Marubeni and Mizuho Leasing on the continued growth of the business."

The cash consideration of $32.00 per share represents a 34% premium over Aircastle's closing stock price on October 23, 2019, the last trading day prior to Aircastle's public announcement that Aircastle was evaluating strategic alternatives, and a 41% premium over the volume weighted average share price during the 20 trading days ended October 23, 2019.

The transaction is subject to customary closing conditions, including approval by Aircastle's shareholders and receipt of certain regulatory approvals, and is expected to close in the first half of 2020. Marubeni has agreed to vote the common shares of Aircastle that Marubeni and its affiliates beneficially own in favor of the transaction.

Given the pending transaction, Aircastle will not host a third quarter earnings call and will not release its third quarter financial results for the period ended September 30, 2019 until Aircastle files its third quarter Form 10-Q.

Citigroup Global Markets Inc. is acting as the exclusive financial advisor to Aircastle and Skadden, Arps, Slate, Meagher & Flom LLP and Conyers LLP are acting as Aircastle's legal advisors.

**About Aircastle Limited**

Aircastle Limited acquires, leases and sells commercial jet aircraft to airlines throughout the world.  As of September 30, 2019, Aircastle owned and managed on behalf of its joint ventures 277 aircraft leased to 87 customers located in 48 countries.

30.     The Merger Consideration represents inadequate compensation for Aircastle's shares given the Company's strong recent financial performance and bright economic outlook. Therefore, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Merger.

**B.  The Proxy Omits Certain Material Information**

31.     On December 6, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for Aircastle's public common stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

32.     First, the Proxy describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion.  However, that description fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Aircastle's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, *if any*, to place on Citi's fairness opinion in determining whether to vote in favor or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Aircastle's common stockholders.

33.     With respect to Citi's *Discounted Dividends Analysis*, the Proxy must disclose: (i) the projected dividends; (ii) the illustrative terminal values; (iii) the assumptions behind why

Aircastle's gross debt to equity would be equal to 2.5x.; (iv) the assumptions on applying exit multiples of 0.8x to 1.0x; and (v) the inputs and assumptions for using a discount range of 8.1% to 9.4%.

34.     Similarly, with respect to Citi's *Selected Companies Analysis*, the Proxy fails to disclose the following observations for each of the selected companies in the analysis: (i) the calendar years 2019 and 2020 estimated pre-tax income; (ii) the calendar years 2019 and 2020 estimated revenues; and (iii) the book value as of June 30, 2019. The Proxy also fails to disclose the inputs and assumptions behind using these specific ranges in calculating the implied ranges of per share equity values: (i) price to book value of 0.89x to 0.96x; (ii) price to calendar year 2020 estimated pre-tax income of 5.5x to 7.1x; and (iii) price to calendar year 2020 estimated earnings of 7.2x to 7.9x. Furthermore, the Proxy fails to adequately disclose why BOC Aviation Limited and Fly Leasing were not included in the *Selected Companies Analysis*, despite being analyzed for comparison purposes.

35.     These key inputs and assumptions are material to Aircastle's stockholders, and their omission renders the summary of Citi's *Discounted Dividends Analysis* and *Selected Companies Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in these analyses a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can
> markedly affect the discounted cash flow value. For example, a change in

9

> *the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars…* This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information, Aircastle stockholders cannot evaluate for themselves the reliability of the analyses make a meaningful determination of whether the ranges reflect the true value of the Company or was the result of Citi's unreasonable judgment, and so make an informed decision regarding whether to vote in favor or against the Proposed Transaction.

36.     Second, in its fairness opinion, Citi fails to disclose the nature of the work it provided to the Marubeni Consortium and its affiliates in the two years prior to rendering its fairness opinion for the Company. Furthermore, the Proxy states that in the two years prior to its fairness opinion, Citi did not provide any work to the Company. This statement is at odds with a disclosure earlier in the Proxy which stated that "in furtherance of [the Company's] assessment of strategic alternatives, the Company's officers have from time to time periodically met with investment banks covering the aircraft leasing industry, including Citi, to discuss the Company's strategic alternatives." Thereby implying that recently Citi had provided work for the Company. Defendants must fully and completely disclose all fees which Citi has received from all parties and a breakdown of those fees.

37.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure

of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### (Against All Defendants for Violation of Section 14(a) of the Exchange Act)

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

42.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information

regarding, amongst other things: (i) the valuation analyses performed by Citi in support of its fairness opinion; and (ii) background information concerning Citi's previous work for the Company and Marubeni Consortium.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

44.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Citi reviewed and discussed its financial analysis with the Board, and further states that the Board considered the financial analysis provided by Citi, as well as the fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Citi's analysis in connection with their receipt of

the fairness opinions, question Citi as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

46.     Aircastle is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

47.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<ins>COUNT II</ins>**
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Aircastle within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Aircastle, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

//

//

Dated: December 18, 2019                    **MONTEVERDE & ASSOCIATES PC**

                                            */s/ Juan E. Monteverde*
                                            Juan E. Monteverde (JM-8169)
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4405
                                            New York, NY 10118
                                            Tel:(212) 971-1341
                                            Fax:(212) 202-7880
                                            Email: jmonteverde@monteverdelaw.com

                                            *Attorneys for Plaintiff*